FOURTH DIVISION
January 31, 2008

No. 1-05-0414

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 03 CR 22601 |
| | ) | |
| TERRANCE GILBERT, | ) | Honorable |
| | ) | Evelyn B. Clay, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE O'BRIEN delivered the opinion of the court:

Defendant, Terrance Gilbert, appeals his conviction for burglary and his eight-year sentence of imprisonment. On appeal, defendant contends that: (1) the trial court erred by failing to question prospective jurors about their understanding of the presumption of innocence, the prosecution's burden of proof, and defendant's right not to testify or call any witnesses; and (2) the trial court erred by failing to order a fitness hearing. We affirm.

Defendant was charged with burglary. At the outset of voir dire, the trial court informed the prospective jurors, en masse, that defendant was presumed innocent of the charges, that it was the State's burden to prove his guilt beyond a reasonable doubt, and that defendant had no obligation to testify or call any witnesses. The trial court did not otherwise question the prospective jurors, either individually or in a group, as to whether they understood and accepted those principles. Defense counsel questioned one potential juror about whether she understood that the burden of proof was different in a civil case than in a criminal case, and asked another potential juror whether she knew that the burden on the State is beyond a reasonable doubt. Defense counsel otherwise did not question the prospective jurors about the presumption of

innocence, the State's burden of proof, or defendant's right not to testify or call witnesses. Nor did counsel ask the court to do so. A jury was empaneled.

At trial, Officer Matthew Fogarty, a special agent for the Norfolk Southern Railway, testified that on September 29, 2003, he was conducting surveillance of the scale track at 53rd and Wallace Streets. The scale track is a lot enclosed with an eight-foot-tall fence topped with razor wire. Inside of the scale track are railroad shipping containers, 40-foot-long semi-trucks that can be lifted off of trains and put onto ships or railcars for transport. Fogarty testified that the door handles of all the containers were locked in place and sealed to prevent anyone from opening the doors.

Fogarty testified that from a distance of approximately 200 feet, he saw defendant holding yellow bolt cutters as he entered the scale track through a hole in the fence. As he approached defendant, Fogarty heard what he described as the unique sound of multiple containers being opened. When he was approximately 40 feet away, Fogarty heard two more containers being opened, followed by the sound of boxes being dragged. After hearing this noise, Fogarty saw defendant come out from behind a container carrying two large boxes. Defendant also had the bolt cutters in his hand. Fogarty observed defendant go back through the hole in the fence and walk down some Metra tracks.

Fogarty testified that he followed defendant. When defendant saw him, he dropped the boxes and started running westbound toward Lowe Park. Fogarty pursued defendant on foot and radioed to other railway police officers for assistance. From approximately 30 feet away, Fogarty saw defendant throw the bolt cutters on the service road next to the Metra tracks and jump off

the retaining wall and into Lowe Park.

Fogarty testified that he observed defendant run across the park as several officers chased him. An unmarked police car pulled up in front of defendant, and defendant was taken into custody. Fogarty went back to the tracks and retrieved the bolt cutters and the boxes that defendant had dropped. The boxes contained 12 dozen baseball caps valued at just over $800.

Fogarty testified that at the police station, he and Detective Cruz spoke with defendant. Detective Cruz read defendant his Miranda rights, and defendant admitted to the burglary.

On cross-examination, Fogarty testified that he did not observe defendant open any of the containers, nor did he observe defendant pull the boxes of baseball caps out of the containers. Fogarty did not send the bolt cutters or boxes to the crime lab for fingerprint identification. Fogarty also testified that defendant did not make a written, videotaped or court-reported statement and did not sign a confession.

Officer Joseph Fitzgerald testified that he was one of the officers who stopped defendant in Lowe Park. After a chase, defendant threw his arms up, said "ya'll got me" and lay down without further instruction.

Fitzgerald testified on cross-examination that he did not see defendant carrying anything, and that after searching defendant, he did not find anything relative to the alleged burglary. Fitzgerald testified that he did not see defendant steal anything or attempt to steal anything.

Defendant did not testify and the defense did not call any witnesses. Before deliberations, the trial court instructed the jury that defendant is presumed innocent of the charge against him, that the State has the burden of proving defendant's guilt beyond a reasonable doubt, that

defendant is not required to prove his innocence and that defendant's decision not to testify must not be considered in any way in arriving at a verdict. The jury found defendant guilty of burglary. The trial court sentenced defendant to eight years' imprisonment.

On appeal, defendant contends that the trial court erred in failing to sua sponte question the potential jurors during voir dire about their understanding and acceptance of the constitutional principles related to the presumption of innocence, the State's burden of proof, and defendant's right not to testify or present any evidence. The State contends defendant waived review by failing to raise an objection at trial (People v. Enoch, 122 Ill. 2d 176, 186 (1988)); however, we address defendant's argument under the plain error exception to the waiver rule as the claimed error is of such a magnitude as to deny him a fair and impartial trial. 134 Ill. 2d R. 615(a); People v. Herron, 215 Ill. 2d 167, 186-87 (2005).

In support of his argument, defendant cites People v. Zehr, 103 Ill. 2d 472 (1984). In Zehr, our supreme court held a trial court erred during voir dire by refusing defense counsel's request to ask questions about the State's burden of proof, defendant's right not to testify, and the presumption of innocence. Zehr, 103 Ill. 2d at 476-78. The supreme court held that "essential to the qualification of jurors in a criminal case is that they know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him." Zehr, 103 Ill. 2d at 477.

To ensure compliance with Zehr, the supreme court amended Rule 431(b) in 1997 to provide that, "[i]f requested by the defendant," the court shall ask the prospective jurors whether

they understand and accept the Zehr principles. 177 Ill. 2d R. 431(b). The rule "seeks to end the practice where the judge makes a broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law." 177 Ill. 2d R. 431, Committee Comments, at lxxix. The appellate court has held that Rule 431(b) as amended in 1997, and in effect at the time of defendant's trial, "does not require the judge to ask the questions unless defendant's counsel has asked the court to do so." People v. Williams, 368 Ill. App. 3d 616, 623 (2006); see also People v. Foreman, 361 Ill. App. 3d 136 (2005). Accordingly, as defense counsel here did not ask the trial judge to question the venire regarding whether they understood and accepted the Zehr principles, the trial court was under no obligation to do so.

Defendant contends that his trial counsel was ineffective for failing to question the venire regarding whether they understood and accepted the Zehr principles. Defendant also contends his trial counsel was ineffective for failing to ask the trial judge to so question the venire. To establish ineffective assistance of counsel, defendant must show that counsel's representation was objectively unreasonable and that but for counsel's errors, there was a reasonable probability that the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 687, 695, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068-69 (1984); Foreman, 361 Ill. App. 3d at 142.

In the present case, given all the evidence against defendant, there was no reasonable probability that the outcome of the trial would have been different had counsel questioned, or asked the judge to question, the venire regarding the Zehr principles. Accordingly, defendant's contention of ineffective assistance is without merit. See also Foreman, 361 Ill. App. 3d at 143

No. 1-05-0414

(holding that counsel's failure to question the venire regarding the Zehr principles did not constitute ineffective assistance where there was no reasonable probability that the outcome of the case would have been different).

In his reply brief, defendant argues that effective May 1, 2007, the supreme court again amended Rule 431(b), deleting the language "[i]f requested by the defendant," and leaving the remainder of the Rule unchanged. Rule 431(b) now reads in pertinent part:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

Thus, Rule 431(b), as amended effective May 1, 2007, currently imposes a sua sponte duty on the trial court to question each potential juror as to whether he understands and accepts the Zehr principles. Such questioning of the potential jurors is no longer dependent upon a request by defense counsel.

In the present case, defendant was convicted and sentenced prior to the effective date of this amendment. Thus, the issue here is whether the amendment should be applied retroactively.

No. 1-05-0414

In <u>Commonwealth Edison Co. v. Will County Collector</u>, 196 Ill. 2d 27 (2001), our supreme court adopted the retroactivity analysis of <u>Landgraf v. USI Film Products</u>, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994). Under that analysis, as interpreted by our supreme court in <u>Commonwealth Edison</u> and later in <u>People v. Atkins</u>, 217 Ill. 2d 66 (2005), the first step is to examine whether the legislature clearly has indicated the temporal reach of the amended statute. If the legislature has not so indicated whether the amendment should be applied retroactively, the analysis turns on whether the amendment is a procedural or substantive change. Procedural changes may be applied retroactively, while substantive changes may not. See <u>Atkins</u>, 217 Ill. 2d at 71. Although <u>Atkins</u> addressed legislative amendments, its holding also applies to supreme court rules. See <u>People ex rel. Madigan v. Petco Petroleum Corp.</u>, 363 Ill. App. 3d 613, 620-21 (2006).

In the recent case <u>People v. Brown</u>, 225 Ill. 2d 188 (2007), our supreme court held that where the legislature expressly has provided for the delayed implementation of a statute, such a provision demonstrates that the law was intended to have only prospective application. In <u>Brown</u>, the statute at issue, the Juvenile Justice Reform Provisions of 1998, was enacted in June 1998, but certain provisions were not to take effect until January 1, 1999. The supreme court held that the delayed implementation made it "clear that the law was intended to have only prospective application" (<u>Brown</u>, 225 Ill. 2d at 201); accordingly, as the legislature had indicated the temporal reach of the statute, the court did not consider whether the amendment was a procedural or substantive change.

In the present case, the amendment to Rule 431(b), which imposed the <u>sua</u> <u>sponte</u> duty on

-7-

the trial court to question each potential juror as to whether he understands and accepts the Zehr principles, was adopted on March 21, 2007, and had an effective date of May 1, 2007. By delaying its implementation, the supreme court expressed the intent that the amended rule would apply prospectively only. See Brown, 225 Ill. 2d 188. Therefore we need not examine whether the amendment is a procedural or substantive change. The trial court's sua sponte duty to question each potential juror regarding his understanding and acceptance of the Zehr principles applies only to voir dire conducted on or after the amended rule's effective date of May 1, 2007; it does not apply retroactively to voir dire conducted prior to May 1, 2007.

In the present case, the trial court conducted voir dire prior to the amended rule's effective date of May 1, 2007. The trial court properly complied with Rule 431(b) as it existed at the time of defendant's trial, and thus there is no cause for reversal of the jury's verdict.

Next, defendant contends that the trial court erred by failing to conduct a hearing as to defendant's fitness to stand trial and be sentenced. In support, defendant relies on: his diagnoses of schizophrenia and bipolar disorder; a TASC evaluation indicating he had heard voices and saw an image he called God or Jesus; his multiple suicide attempts; some bizarre injuries he reported on the presentence investigation report, including that he accidentally shot off his own penis and had it reattached, and that he was shot twice in the head and was treated and released the same day; and his allegedly "incoherent and imperceptible" reply to the trial court's inquiry during sentencing.

Due process prohibits the conviction and sentencing of a defendant who is not fit to stand trial. People v. Woodard, 367 Ill. App. 3d 304, 319 (2006). A defendant is presumed fit to stand

trial and is considered unfit only if he is unable to understand the nature and purpose of the proceedings against him or is unable to assist counsel in presenting a defense. People v. Hill, 345 Ill. App. 3d 620, 625 (2003). The trial court has the duty to order a fitness hearing sua sponte once facts are brought to its attention rasing a bona fide doubt as to defendant's fitness to stand trial or be sentenced. Woodard, 367 Ill. App. 3d at 319. The determination of whether a bona fide doubt exists is within the discretion of the trial court, and its decision will not be reversed absent an abuse of discretion. Hill, 345 Ill. App. 3d at 625-26.

In determining whether a bona fide doubt of fitness exists, courts consider the following factors: the rationality of defendant's behavior and demeanor at trial; counsel's comments concerning defendant's fitness; and any prior medical opinions on defendant's fitness. Woodard, 367 Ill. App. 3d at 319. Further, "[n]o single factor raises a bona fide doubt as to a defendant's fitness to stand trial and sentencing; even the fact that a defendant suffers a mental disturbance or requires psychiatric treatment does not necessarily raise a bona fide doubt. [Citation.] A defendant who has received psychotropic medications is not presumed unfit to stand trial solely by virtue of having received those medications, and a circuit court is under no duty to sua sponte conduct a fitness hearing solely on the basis of the defendant having received such medications. [Citations.] Also, a history of suicide attempts does not by itself demonstrate that a defendant is unfit to stand trial." Woodard, 367 Ill. App. 3d at 320.

In the present case, defendant initially was represented by public defender Arthur Willis. Willis requested a fitness evaluation of defendant on the first court date after he was appointed. Defendant was evaluated by Susan Messina, a psychologist with Forensic Clinical Services who

found him fit to stand trial. On January 30, 2004, Mr. Willis stipulated that if called to testify, Messina would testify that defendant was fit to stand trial. Pursuant to the stipulation, the trial court found defendant fit to stand trial.

Also on January 30, 2004, Mr. Willis requested an evaluation of defendant for TASC. In a letter to the trial court dated February 12, 2004, TASC supervisor James Brown wrote that defendant was clinically unacceptable for TASC, that he was dependent on cocaine and had psychological problems. Mr. Brown thought that defendant needed psychological help because he had been treated for a psychotic disorder, had attempted to hang himself, and reported that he heard voices and saw "an image that he calls God or Jesus, a tall man with a beard that never smile[s], but just looks at him."

On March 19, 2004, Mr. Willis informed the court that defendant's mental state had "deteriorated" and requested a second fitness evaluation, specifically to determine whether defendant required psychotropic medication. Defendant was evaluated by Doctor Roni Seltzberg, a psychiatrist with Forensic Clinical Services. Doctor Seltzberg found defendant fit to stand trial without medication. Doctor Seltzberg noted that, although defendant had required psychotropic medication in the past, he did not need such medication at that time because he did "not present with symptoms of an acute episode of major depression." Doctor Seltzberg also stated that psychotropic medication "might help avoid a future episode, but abstinence from alcohol and illicit substances appears to be a more prominent factor associated with his psychiatric diagnosis."

Mr. Willis ceased representing defendant and another public defender, Stephanie Schlegel, took over defendant's case. On May 4, 2004, Ms. Schlegel noted receipt of Doctor Seltzberg's

report and stipulated to Doctor Seltzberg's opinion that defendant was fit to stand trial without medication. Pursuant to that stipulation, the trial court found defendant fit to stand trial.

At a subsequent pretrial hearing, Ms. Schlegel informed the court that defendant had been put on medication and she requested a status date to see how defendant reacted to the medication. In the two later hearings, no issue was raised with regard to defendant's reaction to his medication.

Trial commenced. After the State presented its case, the trial judge advised defendant of his right to testify and inquired, "Is it your decision not to testify at your trial?" Defendant responded, "Yes it is." The defense rested, and the jury convicted him of burglary.

During sentencing, the defense told the court that defendant had attempted suicide at least twice while he was incarcerated and once since his last court date. From 1996 until his arrest in 2003, defendant was on disability due to his mental health problems. He had been diagnosed with schizophrenia and bipolar disorder and was prescribed psychotropic medication. He also had been held in the psychiatric ward of division 8 at the Cook County jail.

The trial court asked defense counsel (Ms. Schlegel), "Do we have an issue about fitness?" Defense counsel answered, "No, he was evaluated and they found him fit. No, there was no issue as to that." The court asked about defendant's medications and defense counsel answered that defendant was getting his medications in jail and that he was fit with his medications.

The defense argued in mitigation that while in custody, defendant had participated in a program saluting African-American history. The trial court asked defendant if he wanted to say anything on his own behalf, and defendant responded:

"I was doing my best, but when I started using drugs, things started getting worse. I was taking care of my son and doing for the other one. But things started getting worse and worse. My father died. My sister just died not long ago. I felt that I should get myself together. That's why I told them that I did what I did for a reason, so I could try to get more drugs. I had stopped using my medication."

The trial court asked defendant about his speech in the African-American history program. Defendant responded, "In [inaudible] and Aguilar, George Washington Carver [inaudible] eleven different ways peanuts to be used, something open heart surgery." The trial court responded, "That was a nice speech. It was more than eleven, though. I think I heard something like one time or read 300 uses of the peanut."

The court ultimately sentenced defendant to eight years' imprisonment.

On this record, we cannot say that the trial court abused its discretion in failing to sua sponte conduct fitness hearings prior to trial and/or prior to sentencing. As discussed above, Susan Messina, a licensed clinical psychologist, examined defendant and found that he was fit to stand trial. Defense counsel then stipulated that if called to testify, Messina would state that defendant was fit to stand trial. Later, Doctor Seltzberg, a psychiatrist, also examined defendant and found that he was fit to stand trial. Defense counsel then stipulated to Doctor Seltzberg's opinion that defendant was fit to stand trial. During trial, defendant responded appropriately when the trial court asked him whether he wished to testify. During sentencing, defense counsel reiterated that defendant had been found fit. Defendant addressed the court during sentencing and made cogent remarks about his battle with drug addiction. Defendant also assisted his counsel in

explaining a certificate of achievement he had received, telling the court that he was involved in "a MISA program, mental illness and substance abuse." We cannot say that the trial court abused its discretion in determining that defendant was able to understand the nature of the proceedings against him and to assist counsel in his defense.

This case is similar to Woodard, in which the appellate court held that there was no bona fide doubt as to fitness even though defendant there had been on antidepressants, attempted suicide, and attended psychological and behavior management sessions. Woodard, 367 Ill. App. 3d at 320. In support of its holding, the appellate court noted that, as here, "[t]here is nothing in the transcripts or accompanying evidence to indicate that defendant's behavior was anything other than interested, rational, and appropriate, nor is there any indication by the court or defense counsel that defendant was unable to understand the nature of the proceedings against her or to assist counsel in her defense. [Citation.] Defendant did not disrupt the proceedings by speaking out of turn, and when addressed by the court, she responded appropriately and coherently. Neither the circuit court, which had the best opportunity to observe defendant's behavior and assess its level of propriety, nor counsel expressed concern over defendant's ability to proceed with trial. Furthermore, there was no medical opinion in the record to indicate anything to the contrary." Woodard, 367 Ill. App. 3d at 320.

Similar to Woodard, defendant did not disrupt the proceedings, he responded appropriately to the court, the medical opinions indicated he was fit, and counsel did not dispute the medical opinions. Accordingly, the trial court did not abuse its discretion by failing to sua sponte hold a fitness hearing.

Next, defendant contends that his counsel (Ms. Schlegel) was ineffective for failing to request a fitness hearing. Counsel's conduct was not objectively unreasonable, where a psychologist and psychiatrist had examined defendant and found him fit. Also, there was no prejudice, where there is no reasonable probability that after a fitness hearing, defendant would have been found unfit for trial or sentencing. See People v. Mitchell, 189 Ill. 2d 312, 334 (2000). We find no ineffective assistance.

For the foregoing reasons, we affirm the circuit court.

Affirmed.

GALLAGHER and O'MARA FROSSARD, JJ's concur.