Sixth Division
June 13, 2008

No. 1-07-0657

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the Circuit Court |
| | ) | of Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | 04 CR 4163 |
| | ) | |
| TERRELL YARBOR, | ) | |
| | ) | |
| Defendant-Appellant. | ) | Honorable |
| | ) | William G. Lacy, |
| | | Judge Presiding |

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Defendant, Terrell Yarbor, appeals his conviction for aggravated criminal sexual assault, arguing that the trial court failed to follow the decision in People v. Zehr, 103 Ill. 2d 472 (1984), and the amended version of Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007), when it failed to question the prospective jurors on their understanding and acceptance of the legal principles that the defendant is presumed innocent, the defendant need not present any evidence on his own behalf, the State must prove the defendant guilty beyond a reasonable doubt, and the defendant's failure to testify cannot be held against him. Alternatively, defendant contends that his trial counsel was ineffective for failing to question the jurors on these legal principles or to request the questioning by the trial court.

Defendant was charged by indictment with multiple counts of aggravated criminal sexual assault, aggravated kidnaping, and robbery arising from the August 2001 sexual assault of T.W. The trial court conducted defendant's jury trial in July 2006.

1-07-0657

At the beginning of jury selection, the trial court made the following statements to the venire.

"Mr. Yarbor as with other persons charged with crimes is presumed to be innocent of the charges that bring him before you. That presumption cloaks him now at the onset of the trial and will continue to cloak him throughout the course of the proceedings. That is during jury selection, during the opening statements that counsel will be given an opportunity to make to you, during the presentation of the evidence, during the closing arguments the attorney may give, during the instructions of law I will read and provide to you and on into your deliberations and unless and until you individually and collectively are convinced beyond a reasonable doubt that the defendant is guilty.

It is absolutely essential as we select this jury that each of you understand and embraces these fundamental principles, that is that all persons charged with a crime are presumed to be innocent and that it is the burden of the State who brought the charges to prove the defendant guilty beyond a reasonable doubt.

What this means is that the defendant has no obligation to testify in his own behalf or to call any witnesses in his defense. He may simply sit here and rely upon what he and his attorney perceive to be the State's inability to present sufficient evidence to meet their burden. Should

2

that happen, you will have to decide the case on the basis of the evidence presented by the prosecution.

> The fact that the defendant does not testify must be not be considered by you in any way in arriving at your verdict. However, should the defendant elect to testify, or should his attorney present witnesses in his behalf you have to consider that evidence in the same manner and by the same standards as evidence presented by the State's Attorney.

> The bottom line, however, is that there is no burden upon the defendant to prove his innocence. It is the State's burden to prove him guilty."

The court then began to question the potential jurors. During the *voir dire*, the court asked each potential juror, "You heard me discuss the defendant's right to remain silent in this case. Would you be able to follow the law as I stated it?" Each responded in the affirmative. The court also asked, "If the State were to meet their burden of proof and they proved the defendant guilty beyond a reasonable doubt, would you sign a guilty verdict form?" The individual venirepersons answered yes. Additionally, the court asked, "On the other hand, if they failed to meet that burden, would you sign a not guilty verdict form?" The potential jurors each said they would do so. Finally, the court questioned each venireperson if he or she would remain fair to the parties, and each said he or she would. Defendant's attorney declined to ask any questions of the potential jurors.

1-07-0657

At trial, T.W. testified that on August 31, 2001, she was 18 years old. While on her way home from school, she took the bus to the 95th and Dan Ryan station in Chicago. At the station, she was approached by defendant. He indicated that he was from out of town and needed help to find his location. T.W. offered to help defendant and willingly got in his car.

After riding in the car for 5 to 10 minutes, T.W. decided to get out of the car because defendant had turned into an alley. She began to walk toward Vincennes Avenue to catch a bus. As she was walking, defendant came up from behind and grabbed her across the face with his arm. Defendant forced T.W. into his car and struck her in the face multiple times with his fists.

Defendant then got on top of T.W. and forced her to engage in oral sex. He then removed T.W.'s clothing and forced her to have vaginal intercourse. Afterward, defendant told T.W. to get out of the car and struck her once more. T.W. tried to grab her purse, but defendant would not let her have it and pushed her out of the car.

T.W. found a friend who took her home. Once at home, T.W. called the police and an ambulance arrived to take her to the hospital. At the hospital, a sexual assault kit was opened and used to collect evidence from T.W.'s body.

T.W. admitted that she originally lied to the police by telling them that she met defendant on the bus and that she was abducted on the street. She testified that she told that story because she was afraid it was her fault since she entered defendant's car willingly. T.W. gave a description of defendant's age, height, weight and race.

In September 2002, the police contacted T.W. and she viewed a photograph array. She identified two individuals in the array as looking like her attacker, one of whom was defendant.

4

She identified defendant in court as her attacker and she was certain he was the one who assaulted her.

Forensic testing was performed on the vaginal swabs taken from T.W. as part of the sexual assault kit. The testing showed the presence of semen on the swab. Further, testing matched the DNA profile in the semen to defendant's DNA profile. According to the forensic scientist, this DNA profile "would be expected to occur approximately 1 in 240 quadrillion a black, 1 in 71 quadrillion white, and 1 in 490 quadrillion Hispanics unrelated individuals." Also, it was determined that defendant does not have an identical twin.

The State was permitted to introduce evidence of other crimes. K.J. testified about an attack that occurred shortly after T.W.'s attack, on September 21, 2001. K.J. was taking a semester off from college to earn money. She was working on Chicago's south side selling cologne to businesses and individuals. K.J.'s supervisor initiated a sale to defendant, but left K.J. to complete the sale. Defendant told her he wished to purchase three bottles, but needed to go to his uncle's house nearby to get the money. K.J. followed defendant to the house, which was a block away from her coworkers. Defendant told her to wait while he got the money. When he returned, he grabbed her around the neck and forced her into an abandoned garage.

Inside the garage, defendant continued to strangle K.J. by lifting her off the ground by her neck. Defendant then forced K.J. to perform oral sex on him. Next, he told her to lie down and he forced her to have vaginal intercourse with him. At one point, K.J. tried to escape, but defendant caught her and struck her in the head with his fists. Eventually, K.J. was able to escape and she returned to her coworkers, told them what happened, and was taken to the

hospital. She identified defendant as her attacker.

After the State rested its case, defendant moved for a directed verdict, which the trial court denied. Defendant rested without presenting any evidence.

Prior to deliberations, the trial court made the following statements to the jurors.

"The defendant is presumed to be innocent of the charge against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict and it is not overcome unless, from all the evidence in this case, you are convinced beyond a reasonable doubt that he is guilty.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence.

The fact that the defendant did not testify must not be considered by you in any way in arriving at your verdict."

Following deliberations, the jury found defendant guilty of two counts of aggravated criminal sexual assault. At defendant's sentencing hearing, the State presented evidence of two additional aggravated criminal sexual assaults committed by defendant as well as defendant's 12 prior felony convictions, including convictions for criminal sexual assault, aggravated battery, unlawful use of a weapon and several narcotics offenses. The trial court sentenced defendant to a mandatory term of natural life in prison. This appeal followed.

On appeal, defendant argues that the amended version of Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007) should be applied retroactively and, thus, the trial court failed to comply with Rule 431(b) when it did not question the prospective jurors on their understanding and acceptance of the legal principles outlined in People v. Zehr, 103 Ill. 2d 472 (1984):  the defendant is presumed innocent, the defendant need not present any evidence on his own behalf, the State must prove the defendant guilty beyond a reasonable doubt, and the defendant's failure to testify cannot be held against him.  Alternatively, defendant's trial counsel was ineffective for failing to question the jurors on these legal principles or to request the questioning by the trial court.

The State asserts that defendant forfeited this issue on appeal by failing to object at trial or to raise the issue in a posttrial motion.  To preserve an issue for review, defendant must both object at trial and in a written posttrial motion.  People v. Enoch, 122 Ill. 2d 176, 186 (1988).  Failure to do so operates as a waiver as to that issue on appeal.  People v. Ward, 154 Ill. 2d 272, 293 (1992).  However, defendant asks this court to review this issue as plain error.  Supreme Court Rule 615(a) states that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.  Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."  134 Ill. 2d R. 615(a).  "Under the plain error rule, issues not properly preserved may be considered by a reviewing court under two limited circumstances: (1) where the evidence is closely balanced, so as to preclude argument that an innocent person was wrongfully convicted; or (2) where the alleged error is so substantial that it affected the fundamental fairness of the proceeding, and remedying the error is

7

1-07-0657

necessary to preserve the integrity of the judicial process." People v. Hall, 194 Ill. 2d 305, 335 (2000).

Defendant relies on the second prong, asserting that the trial court's failure to question prospective jurors about the Zehr principles denied him his right to a trial by a fair and impartial jury and impugned the integrity of the judicial system. "However, before invoking the plain error exception, 'it is appropriate to determine whether error occurred at all,' because without error, there can be no plain error." People v. Smith, 372 Ill. App. 3d 179, 181 (2007), quoting People v. Wade, 131 Ill. 2d 370, 376 (1989). Therefore, we will review the issue to determine if there was any error before considering it under plain error.

In Zehr, our supreme court held a trial court erred during *voir dire* by refusing the defense counsel's request to ask questions about the State's burden of proof, defendant's right not to testify, and the presumption of innocence. Zehr, 103 Ill. 2d at 476-78. The supreme court held that "essential to the qualification of jurors in a criminal case is that they know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him." Zehr, 103 Ill. 2d at 477.

In 1997, the supreme court amended Rule 431 to ensure compliance with the requirements of Zehr. 177 Ill. 2d R. 431, Committee Comments, at lxxix. Following the amendment, Rule 431(b) required that, if requested by the defendant, the court shall ask the potential jurors, individually or as a group, whether they understand the Zehr principles. 177 Ill. 2d R. 431(b). The rule "seeks to end the practice where the judge makes a broad statement of the

8

applicable law followed by a general question concerning the juror's willingness to follow the law."  177 Ill. 2d R. 431, Committee Comments, at lxxix.

On March 21, 2007, the supreme court amended Rule 431(b) and removed the phrase, "If requested by the defendant" from the rule.  The amended version now reads:

> "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects."  Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

Therefore, Rule 431(b), as amended, currently imposes a duty on the trial court to question each potential juror as to whether he understands and accepts the Zehr principles.  Such questioning of the potential jurors is no longer dependent upon a request by defense counsel.

Defendant contends that this amendment to Rule 431(b) should be applied retroactively because the amendment is procedural and it fails to clearly indicate whether it applies retroactively.  It is uncontested that defendant was convicted and sentenced prior to the effective

9

date of the amendment.

We note that "the construction of our rules is comparable to this court's construction of statutes." Robidoux v. Oliphant, 201 Ill. 2d 324, 332 (2002). "As is the case with statutes, our primary task in construing a rule is to ascertain and give effect to the intent of its drafters. [Citation.] 'The most reliable indicator of intent is the language used, which should be given its plain and ordinary meaning.' " Robidoux, 201 Ill. 2d at 332, quoting In re Estate of Rennick, 181 Ill. 2d 395, 405 (1998). As with a statute, the construction of supreme court rules is a question of law and is reviewed *de novo*. Robidoux, 201 Ill. 2d at 332.

In Commonwealth Edison Co. v. Will County Collector, 196 Ill. 2d 27 (2001), our supreme court adopted the retroactivity analysis of Landgraf v. USI Film Products, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994).

"Under the Landgraf test, if the legislature has clearly

indicated what the temporal reach of an amended statute should be,

then, absent a constitutional prohibition, that expression of

legislative intent must be given effect. However, when the

legislature has not indicated what the reach of a statute should be,

then the court must determine whether applying the statute would

have a retroactive impact, *i.e.*, 'whether it would impair rights a

party possessed when he acted, increase a party's liability for past

conduct, or impose new duties with respect to transactions already

completed.' " Commonwealth Edison, 196 Ill. 2d at 38, quoting

1-07-0657

> Landgraf, 511 U.S. at 280, 128 L. Ed. 2d at 261-62, 114 S. Ct. at
> 1505.

If there would be no retroactive impact, as that term is defined by the court, then the amended law may be applied. If, however, applying the amended version of the law would have a retroactive impact, then the court must presume that the legislature did not intend that it be so applied. Commonwealth Edison, 196 Ill. 2d at 38, citing Landgraf, 511 U.S. at 273-74, 280, 128 L. Ed. 2d at 257, 261-62, 114 S. Ct. at 1501, 1505.

The supreme court clarified that the Landgraf test, as applied in Illinois, is "quite simple" in light of section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2004)), in which "the legislature has clearly indicated the 'temporal reach' of *every* amended statute." (Emphasis in original.) Caveney v. Bower, 207 Ill. 2d 82, 92 (2003). Section 4 provides:

> "No new law shall be construed to repeal a former law,
> whether such former law is expressly repealed or not, as to any
> offense committed against the former law, or as to any act done,
> any penalty, forfeiture or punishment incurred, or any right
> accrued, or claim arising under the former law, or in any way
> whatever to affect any such offense or act so committed or done, or
> any penalty, forfeiture or punishment so incurred, or any right
> accrued, or claim arising before the new law takes effect, save only
> that the proceedings thereafter shall conform, so far as practicable,
> to the laws in force at the time of such proceeding." 5 ILCS 70/4

11

1-07-0657

(West 2004).

The court found that "section 4 represents a clear legislative directive as to the temporal reach of statutory amendments and repeals: those that are procedural in nature may be applied retroactively, while those that are substantive may not." Caveney, 207 Ill. 2d at 92; see also 5 ILCS 70/4 (West 2004). Further, section 4 applies to both criminal and civil cases. Caveney, 207 Ill. 2d at 92-93.

Recently, in People v. Brown, 225 Ill. 2d 188, 201 (2007), the supreme court held that where the legislature expressly has provided for the delayed implementation of a statute, such a provision demonstrates that the law was intended to have only prospective application. In Brown, the statute at issue, the Juvenile Justice Reform Provisions of 1998, was enacted in June 1998, but the effective date was not until January 1, 1999, with the exception that one article had an effective date of January 1, 2000. Brown, 225 Ill. 2d at 201; see also Pub. Act 90–590, art. 4001, §4001-99, eff. January 1, 1999. The supreme court concluded that "[i]n light of these terms, it is clear that the law was intended to have only prospective application." Brown, 225 Ill. 2d at 201.

In applying that conclusion the facts of the case, the supreme court noted that the juvenile proceedings involving the defendant took place in late 1997, more than a year before the relevant portions of the Juvenile Justice Reform Provisions of 1998 became operative. The court concluded that, based on the legislative intent, the amendments were "inapplicable to this matter." Brown, 201 Ill. 2d at 202.

Similarly, in the present case, the amendment to Rule 431(b) was adopted on March 21,

12

2007, and had an effective date of May 1, 2007. If we apply the holding in <u>Brown</u>, the supreme court, by delaying the amendment's effective date, expressed the intent that the amended rule would apply prospectively only. See <u>Brown</u>, 225 Ill. 2d at 201. The trial court's duty to question each potential juror regarding his understanding and acceptance of the <u>Zehr</u> principles applies only to *voir dire* conducted on or after the amended rule's effective date of May 1, 2007; it does not apply retroactively to *voir dire* conducted prior to May 1, 2007.

We note that the retroactivity of Rule 431(b) was recently considered and rejected by this court in <u>People v. Gilbert</u>, 379 Ill. App. 3d 106, 110-12 (2008). There, the reviewing court relied on <u>Brown</u> and concluded that the future effective date of May 1, 2007, indicated that the supreme court intended for the amended version of Rule 431(b) to be applied prospectively. <u>Gilbert</u>, 379 Ill. App. 3d at 111-12. We reach the same conclusion in the instant case.

Moreover, we point out that the <u>Landgraf</u> test, as adopted in <u>Commonwealth Edison</u>, does not permit the retroactive application of statutes if it would " 'impose new duties with respect to transactions already completed.' " <u>Commonwealth Edison</u>, 196 Ill. 2d at 38, quoting <u>Landgraf</u>, 511 U.S. at 280, 128 L. Ed. 2d at 261-62, 114 S. Ct. at 1505. In such cases, if "applying the amended version of the law would have a retroactive impact, then the court must presume that the legislature did not intend that it be so applied." <u>Commonwealth Edison</u>, 196 Ill. 2d at 38.

Here, it is clear that retroactive application of Rule 431(b) would "impose new duties" on an already completed criminal prosecution. If we were to hold that Rule 431(b) was to be applied retroactively, then all pending direct appeals from a jury trial would be subject to reversal and a new trial. We presume that the supreme court did not intend such an application. In the

instant case, the trial court conducted *voir dire* on July 5, 2006, several months prior to the amended rule's effective date of May 1, 2007. Since we have found that the amended version of Rule 431(b) does not apply retroactively, we must consider whether the trial court complied with the version of Rule 431(b) that was in effect during defendant's trial.

At the time of defendant's trial, Rule 431(b) provided for the trial court to question prospective jurors about the <u>Zehr</u> principles, only "[i]f requested by the defendant." 177 Ill. 2d R. 431(b). Defendant's attorney did not make a request for <u>Zehr</u> questioning. Thus, the trial court complied with Rule 431(b) that was in effect at the time and there was no error, let alone plain error.

Further, we point out that the trial court fully advised the jurors about all of the <u>Zehr</u> principles prior to *voir dire* and again before deliberations. The court also asked all of the potential jurors questions regarding defendant's right to remain silent, their willingness to sign a guilty verdict form if the State satisfied its burden of proof, their willingness to sign a not guilty verdict form if the State failed to prove defendant guilty, and if they would be fair to the parties. Each of the jurors answered yes to all of these questions. There is nothing in the *voir dire* transcript to indicate that any of the jurors failed to follow the <u>Zehr</u> principles even though they were not directly asked about each principle. The trial court more than satisfied its duties under Rule 431(b) in effect at the time of defendant's trial.

In the alternative, defendant contends that his trial counsel was ineffective for failing to ask the potential jurors about the <u>Zehr</u> principles or request the trial court to do so.

Claims of ineffective assistance of trial counsel are resolved under the standard set forth

14

in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct 2052 (1984). In Strickland, the Supreme Court delineated a two-part test to use when evaluating whether a defendant was denied the effective assistance of counsel in violation of the sixth amendment. Under Strickland, a defendant must demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced defendant. Strickland, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. To demonstrate performance deficiency, a defendant must establish that counsel's performance was below an objective standard of reasonableness. People v. Edwards, 195 Ill. 2d 142, 163 (2001). In evaluating sufficient prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. If a case may be disposed of on the ground of lack of sufficient prejudice, that course should be taken, and the court need not ever consider the quality of the attorney's performance. Strickland, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069. This determination must be made on the basis of the entire record, not isolated instances. People v. Kluppelberg, 257 Ill. App. 3d 516, 526 (1993). Effective assistance of counsel refers to competent, not perfect, representation. People v. Palmer, 162 Ill. 2d 465, 476 (1994).

In People v. Benford, 349 Ill. App. 3d 721 (2004), the defendant made an identical claim of ineffective assistance of counsel based on Rule 431(b). In that case, the trial court failed to inform the jurors that the defendant's failure to testify cannot be held against him prior to trial; however, the court did tell the potential jurors about the presumption of innocence, the State's

burden to prove defendant guilty, and that defendant is not required to offer any evidence on his own behalf. However, before deliberations, the trial court did inform the jury that the fact that the defendant did not testify cannot be held against him. The court did not question the individual jurors as to whether they could abide by the legal principles, nor did defense counsel request the court to ask. Benford, 349 Ill. App. 3d at 732-33. The court concluded:

> "Under Rule 431(b) and Zehr, defendant's decision to ask jurors individually as to whether they understand and accept the principles of law is not mandatory, but optional. Here, defense counsel elected not to exercise his right to pose individual questions. Although counsel failed to have the circuit court inform the jurors regarding defendant's decision not to testify, the jury was made aware of this principle just prior to deliberating, thereby curing any error." Benford, 349 Ill. App. 3d at 733.

The same circumstances are present in this case and defendant has failed to cite a case in which an attorney was found to be ineffective for failing to request the optional questioning under Rule 431(b). We agree with the court in Benford and do not find defendant's attorney ineffective since Rule 431(b) was optional. See also People v. Foreman, 361 Ill. App. 3d 136, 143 (2005) (finding that defense counsel was not ineffective for failing to question jurors on Zehr principles).

Further, even if we assume for the purposes of this appeal that defendant's trial counsel's performance was deficient, defendant failed to establish any prejudice. The evidence presented

16

by the State was overwhelming. T.W. testified that after she left defendant's vehicle, he grabbed her from behind and forced her into his car. He struck her several times and forced her to engage in oral sex and vaginal intercourse. The DNA profile in semen collected from T.W.'s body at the hospital was a match to defendant's DNA profile. The State presented other crimes evidence in which K.J. testified that defendant forced her into a garage by grabbing her around the neck and strangling her. He forced her to engage in oral sex and vaginal intercourse. He struck her in the head when she tried to escape. K.J. also identified defendant at trial as her attacker. This evidence was uncontradicted at trial.

In an effort to avoid this overwhelming and uncontradicted evidence, defendant asserts that he has established prejudice because the failure to question the jurors rendered the verdict fundamentally unfair. This basis for satisfying the prejudice prong was considered and rejected in People v. Pearson, 356 Ill. App. 3d 390, 398 (2005). In that case, the defendant raised an argument identical to defendant's—that his trial counsel was ineffective for failing question or request the court to question the potential jurors about the Zehr principles. In considering the defendant's ineffective assistance claim, the reviewing court found that the attorney's failure to request *voir dire* questioning on the Zehr principles was unreasonable and satisfied the first prong under Strickland. Pearson, 356 Ill. App. 3d at 397-98. However, the court found that in light of the overwhelming evidence, the defendant could not establish prejudice. The defendant contended that the reviewing court could not "have confidence in the jury's verdict in this case because it is impossible to determine if the jurors held any prejudice against the Zehr principles." Pearson, 356 Ill. App. 3d at 398. In response, the Pearson court referred back to Strickland.

1-07-0657

" 'In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law.' Strickland, 466 U.S. at 649, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068." Pearson, 356 Ill. App. 3d at 398.

The court concluded that it could "not find any reasonable probability that a jury consisting of reasonable people would have reached a different result given the strength of the State's case." Pearson, 356 Ill. App. 3d at 398.

Similarly, in the present case, we have already determined that the evidence presented by the State was overwhelming. While we do not find that defendant's trial attorney's performance was deficient, we agree with the court in Pearson as to its conclusion that the prejudice prong cannot be satisfied where the strong evidence from the State against the defendant. The result of the proceeding would not have been different absent defense counsel's alleged errors.

Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

J. GORDON and O'MALLEY, JJ., concur.

18