THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES ANDERSON, Defendant-Appellant.

First District (1st Division)   No. 1—07—1768

Opinion filed March 16, 2009.

GARCIA, J., specially concurring.

Michael J. Pelletier, Patricia Unsinn, and Brian E. Koch, all of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald, Alan J. Spellberg, and Clare Wesolik Connolly, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

The amended Illinois Supreme Court Rule 431(b) went into effect on May 1, 2007. Jury selection in the murder case against James Anderson began three weeks later, on May 21, 2007. The jury found the defendant guilty of first degree murder and aggravated battery with a firearm. The defendant raises several issues on appeal, but we focus on the question of whether the trial court complied with Rule 431(b) (Ill. S. Ct. R. 431(b) (eff. May 1, 2007)) and, if not, whether the defendant's convictions should be reversed for another trial. We reverse and remand.

FACTS

On May 3, 2003, defendant agreed to drive the codefendants, Christopher Washington and Sheldon Smith, to a neighborhood where the codefendants shot three individuals. Two of the victims were injured and one died. According to defendant, the codefendants merely asked him to drive them to obtain marijuana. Defendant testified he did not know the codefendants intended to shoot the victims. Defendant said he continued to follow the codefendants' instructions as they chose their targets because he feared for his safety. Defendant never attempted to withdraw himself from the scene or report the offenses.

Codefendant Washington, who pled guilty to his involvement in the offenses and was sentenced to 26 years' imprisonment, testified he was in a car around midnight on the date in question looking to avenge a fellow gang member's death. Washington did not know the driver of the car. Washington was armed. He shot three people, in different locations. He said he shot all the victims, but he did not instruct the driver to slow the car in order to do so. The police chased the car, and Washington and the driver left it to run away. Washington was caught and arrested.

Although he originally named two rival gang members, Washington eventually implicated defendant and codefendant Smith. Washington said at trial the police forced him to name defendant and codefendant Smith because of their criminal backgrounds.

Washington had agreed to videotape his statement. It was

introduced into evidence. At trial, he said most of the videotaped statement was untrue. In the videotape, Washington said he, defendant, and Smith were selected by their gang to shoot rival gang members in exchange for drugs and money. Defendant drove the car. Defendant and Smith were armed with handguns and all three shot at different individuals throughout the neighborhood. Washington said he was treated well by the police. At trial, he testified he was "jacked" by the police.

Detective John Otto testified he and Assistant State's Attorney (ASA) William Merritt interviewed defendant on January 30, 2004. Otto advised defendant of his *Miranda* rights, which defendant waived. Defendant admitted he drove the vehicle involved in the shootings while Smith and Washington rode as passengers. When Otto confronted defendant with inconsistencies between his confession and Washington's statement, defendant drew a diagram of the shootings as he remembered them. Defendant said he drove the vehicle during each shooting. Defendant never told Otto he was threatened at gunpoint. ASA Merritt's testimony was consistent with that of Detective Otto, adding defendant said he was the driver, but not a shooter.

Defendant consented to have his confession videotaped. The videotape was admitted as evidence. The videotaped statement was consistent with defendant's oral statement, adding he was in shock after the first shooting, but he continued driving as told. He did not say he was threatened at gunpoint.

Defendant testified he did not know Washington and Smith were armed when he agreed to drive them to obtain marijuana. While driving, Washington first instructed defendant to slow down near two men standing on a corner. Washington rolled down the window, asked the men for marijuana, then shot at them. Defendant was shocked, but he was instructed to drive away. He complied. On the way to the next location, Washington and Smith told defendant to slow the car when they saw another individual. Smith asked that individual whether he had marijuana and whether he was a rival gang member. The individual responded no to both questions. Smith shot him. Defendant then drove to the next location as instructed. He was told to stop when they reached a man in an alley. Washington asked the man about marijuana. Then he shot him.

On cross-examination, defendant said he did not want to continue driving the car, but he was ordered to at gunpoint. Defendant admitted he did not include that fact in his videotaped statement; however, he said it to the detectives before he gave the videotaped statement. Anderson testified he drove to the second location as instructed because he thought he would be shot if he disagreed. Defendant said

he stopped the car during the second shooting, but did not attempt to exit because he was afraid. Defendant denied knowing Washington and Smith intended to shoot the man in the alley, but admitted he drove the car around the block to find the man again. When unsuccessful, Smith and Washington exited the car and approached another individual. Defendant was instructed to wait in the car and he complied. Smith and Washington shot that individual, then told defendant to drive away. Defendant tried to slow the car when the police approached, but was instructed to turn on a dead-end road and speed up. He complied and did not exit the car to run away until instructed. Defendant later moved to Du Page County. Defendant denied evading the police, but admitted he never reported the offenses because he feared for his and his family's safety.

The jury found defendant not guilty of aggravated battery with a firearm of the first victim, but guilty of aggravated battery with a firearm of the second victim and first degree murder of the third victim. Both convictions were based on the theory of accountability. Defendant was sentenced to consecutive terms of 35 years' imprisonment for the first degree murder count and 10 years' imprisonment for the aggravated battery with a firearm count. This timely appeal followed.

DECISION

I. Rule 431(b)

We first turn to the issue of whether the court complied with the requirements of Rule 431(b) and, if not, whether lack of compliance may be considered harmless error.

Defendant did not make a Rule 431(b) objection. See *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988) (in order to preserve an error for appellate review, the defendant must object at trial and include the alleged error in a posttrial motion). The State contends the defendant forfeited the Rule 431(b) issue by failing to make a timely objection and by omitting the issue from his posttrial motion. We recognize, as suggested by the defendant, a "less rigid application of the waiver rule" is applied when the trial court's conduct is at the center of the claimed error. *People v. Nevitt*, 135 Ill. 2d 423, 455, 553 N.E.2d 368 (1990); *People v. Stevens*, 338 Ill. App. 3d 806, 810, 790 N.E.2d 52 (2003). We have chosen to address the defendant's claim that plain error occurred. We focus our attention on the questioning of the first panel, from which eight jurors were selected.

The plain error doctrine allows us to review an issue affecting substantial rights despite forfeiture in either of two circumstances:

"First, where the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence, a reviewing court may consider a forfeited error in order to preclude an argument that an innocent man was wrongly convicted. [Citation.] Second, where the error is so serious that [a] defendant was denied a substantial right, and thus a fair trial, a reviewing court may consider a forfeited error in order to preserve the integrity of the judicial process." *People v. Herron*, 215 Ill. 2d 167, 178-79, 830 N.E.2d 467 (2005).

See *People v. Gilbert*, 379 Ill. App. 3d 106, 109, 882 N.E.2d 1140 (2008) (alleged *Zehr* violation addressed under plain error exception as the claimed error "is of such a magnitude as to deny him a fair and impartial trial").

It is the second *Herron* circumstance that we consider in this case. Defendant claims the trial court's failure to comply with Rule 431(b) denied him basic guarantees for obtaining a fair and impartial jury. The right to an impartial jury "is so fundamental to due process that any infringement of that right requires reversal by a reviewing court." *People v. Boston*, 271 Ill. App. 3d 358, 360, 648 N.E.2d 1002 (1995).

The court conducted *voir dire* and empaneled the jury. The court first told the entire group of prospective jurors:

"The charges in this case, ladies and gentlemen, come by way of a Cook County Grand Jury indictment. They are not any evidence of guilt against [defendant]. He is presumed innocent of the charges and the State has the burden of proving him guilty beyond a reasonable doubt."

The first panel of prospective jurors was then brought forward. The judge said:

"As I indicated earlier, the defendant is presumed innocent of the charges. The State has the burden of proving the defendant guilty beyond a reasonable doubt. The defendant is not required to prove his innocence, nor is he required to testify or call witnesses on his own behalf.

Should the State meet their burden of proof beyond a reasonable doubt, is there anybody seated in the jury box who could not or would not go into the jury room with your fellow jurors and the law that governs this case as I give it to you and sign a verdict form of guilty? Anybody who could not or would not do that for any reason?

(No audible response.)

No response. Should the State fail to meet their burden of proof beyond a reasonable doubt, is there anybody seated in the jury box who could not or would not go into the jury room with your fellow jurors and the law that governs this case as I give it to you and sign a verdict form of not guilty?

(No audible response.)

No response."

Eight jury members were selected from this panel. After the eight jury members were selected, they were sent to the jury room and were not present for the *voir dire* of the remaining panels.

When the second panel of potential jurors was brought forward, the judge said:

"Ladies and gentlemen, I wish to thank you for your time and patience. As I indicated earlier, the charges against the defendant come by way of a Grand Jury indictment. They are not any evidence against the defendant.

The defendant is presumed innocent of the charges against him and the State has the burden of proving him guilty beyond a reasonable doubt. He is not required to call witnesses on his own behalf or testify on his own behalf.

Is there anybody who has any qualms or problems with those propositions of law?

(No audible response.)

No response. Should the State meet their burden of proof beyond a reasonable doubt, is there anybody seated in the jury box who could not or would not go into the jury room with your fellow jurors and follow the law that governs this case as I give it to you and sign a verdict form of guilty? Anybody who could not or would not do that for any reason?

(No audible response.)

No response. Should the State fail to meet their burden of proof beyond a reasonable doubt, is there anybody seated in the jury box who could not or would not go into the jury room with your fellow jurors and the law that governs this case as I give it to you and sign the verdict form of not guilty?

(No audible response.)

No response."

Four jurors were selected to serve from this panel and one juror was selected as an alternate.

When the court called the third panel, the judge said:

"Again, ladies and gentlemen, I wish to thank you for your time and patience. As indicated in my opening remarks, the defendant is presumed innocent of the charges against him and the State has the burden of proving him guilty beyond a reasonable doubt.

Is there anyone who has any problems or qualms with that proposition of law?

(No audible response.)

No response. The defendant is not required to prove his innocence. He is not required to call witnesses or testify on his own behalf.

If the State meets their burden of proof beyond a reasonable doubt, is there anybody seated in the jury box who could not or would not go into the jury room with your fellow jurors and the law that governs this case as I give it to you and sign a verdict form of guilty? Anybody who would not or could not do that?

(No audible response.)

No response. If the State should fail to meet their burden of proof beyond a reasonable doubt, is there anybody who could not or would not follow the law and sign a verdict form of not guilty.

(No audible response.)

No response."

One alternate juror was selected from this panel.

The defense does not challenge the trial court's questioning of the second and third juror panels. Nor do we.

The canons of statutory construction apply to supreme court rules. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 332, 775 N.E.2d 987 (2002). Our primary goal is to ascertain and give effect to the intent of the drafters by relying on the plain and ordinary language of the rule. *Robidoux*, 201 Ill. 2d at 332. The supreme court has said:

"The rules of court we have promulgated are not aspirational. They are not suggestions. They have the force of law, and the presumption must be that they will be obeyed and enforced as written." *Bright v. Dicke*, 166 Ill. 2d 204, 210, 652 N.E.2d 275 (1995).

Construction of supreme court rules is a question of law, which we review *de novo*. *Robidoux*, 201 Ill. 2d at 332.

■ Rule 431(b), as amended effective May 1, 2007, provides:

"The court *shall ask* each potential juror, individually or in a group, whether that juror *understands and accepts* the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry *shall* provide each juror an *opportunity to respond* to specific questions concerning the principles set out in this section." (Emphasis added.) Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

■ Before the 2007 amendment, the court was required to admonish the jurors and ascertain whether they understood and accepted the enumerated principles announced in *People v. Zehr*, 103 Ill. 2d 472,

469 N.E.2d 1062 (1984), "[i]f requested by the defendant." 177 Ill. 2d R. 431(b). Before that, in 1997, Rule 431 was amended to ensure compliance with the *Zehr* principles by changing the court's *voir dire* requirements from discretionary to compulsory by amending the word "may" to "shall." See *People v. O'Brien*, 197 Ill. 2d 88, 93, 754 N.E.2d 327 (2001) (use of the word "shall" is "construed as a clear expression of legislative intent to impose a mandatory obligation").

It is axiomatic that amendments to rules are designed to serve some purpose. *In re Application of the County Collector*, 356 Ill. App. 3d 668, 670, 826 N.E.2d 951 (2005). We must construe the rule consistent with the purpose of the amendments, relying on the presumption that the supreme court intended to change the law in 1997 and 2007. See *In re Application of the County Collector*, 356 Ill. App. 3d at 670.

The clear language of Rule 431(b) requires the court to ensure jurors are qualified to know, understand, and accept the enumerated principles and are provided with an opportunity to respond. See *Zehr*, 103 Ill. 2d at 477. The rule "seeks to end the practice where the judge makes a broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law." 177 Ill. 2d R. 431, Committee Comments, at lxxix.

When the 2007 amendment deleted the language "[i]f requested by the defendant," the rule charged trial courts with an affirmative *sua sponte* duty to ask potential jurors whether they understand and accept the *Zehr* principles in each and every case. *People v. Stump*, 385 Ill. App. 3d 515, 520, 896 N.E.2d 904 (2008). Moreover, the court must provide each juror with "an opportunity to respond to" the specific *Zehr* principles. We find Rule 431(b) was amended to send a clear message to trial and appellate courts: it is the courts' responsibility to enforce the rules as written. Compliance with Rule 431(b) is a judicial duty.

The incomplete *voir dire* conducted in this case is the practice the amended rule seeks to end. See 177 Ill. 2d R. 431, Committee Comments. With regard to the first panel of prospective jurors, from which eight were selected, the court provided three of the four *Zehr* principles in narrative form, not in questions. Asking the first panel members as a group whether they would sign the appropriate verdict form if the State had or had not met its burden of proof was a "general question concerning the juror's willingness to follow the law." 177 Ill. 2d R. 431, Committee Comments, at lxxix. The court did not determine whether the majority of empaneled jurors understood and accepted the *Zehr* principles. The court addressed those principles but did not satisfy the stringent requirements of Rule 431(b).

The questions set out in Rule 431(b) are "essential to the qualifications of jurors in a criminal case." *Zehr*, 103 Ill. 2d at 477. Instructing the jury properly at the end of trial does not address the question of whether a fair and impartial jury has been selected. The supreme court said:

> "If a juror has a prejudice against any of these basic guarantees, an instruction given at the end of the trial will have little curative effect." *Zehr*, 103 Ill. 2d at 477.

See *People v. Starks*, 169 Ill. App. 3d 588, 596, 523 N.E.2d 983 (1988) ("*Zehr* teaches that admonitions and *instructions* are no substitute for interrogation" (emphasis added)).

The decisions cited by the State do not apply to this case. All of them involved the preamendment versions of Rule 431(b). See *People v. Yarbor*, 383 Ill. App. 3d 676, 686, 889 N.E.2d 1225 (2008); *People v. Williams*, 368 Ill. App. 3d 616, 623, 858 N.E.2d 606 (2006); *People v. Benford*, 349 Ill. App. 3d 721, 733, 812 N.E.2d 714 (2004).

We have found one case decided under the amended version of Rule 431(b). In *Stump*, the Fourth District held the trial court's error in failing to fully comply with the rule was harmless where each juror was "addressed" with all of the *Zehr* principles "at some point during *voir dire*" either by the judge or by defense counsel, and the evidence against defendant was overwhelming. *Stump*, 385 Ill. App. 3d at 522. *Stump* is distinguishable from this case because, here, neither defense counsel nor the court "addressed" each juror with all four of the *Zehr* principles during *voir dire*. Moreover, despite acknowledging that "the mandatory nature of the rule" signified presumptive prejudicial error, the *Stump* court used a harmless error analysis. *Stump*, 385 Ill. App. 3d at 520-21. We decline to do so.

We recognize the evidence against the defendant was substantial. But the weight of the evidence is not something we are obliged to consider. We have found the plain error described in the second circumstance of the *Herron* test. That is, the Rule 431(b) error "is so serious that [a] defendant was denied a substantial right, and thus a fair trial." *Herron*, 215 Ill. 2d at 178-79. Once having said that, there is no need to inquire into the harmfulness of the error or the measure of prejudice incurred by the defendant. Plain error is reversible error. See *People v. Keene*, 169 Ill. 2d 1, 17, 660 N.E.2d 901 (1995). There is no need for further inquiry.

## II. Remaining Contentions

Because of our disposition of the Rule 431(b) issue, we see no need to consider defendant's other contentions.

CONCLUSION

We reverse the judgment of the trial court and remand this case for a new trial.

Reversed and remanded.

HALL, J., concurs.

JUSTICE GARCIA, specially concurring:

I add two reasons to find plain error and reverse.

First, while the *Stump* court concluded that the *Zehr* principles were substantially "addressed" before the prospective jurors, I find the analysis, guided by the holding in *People v. Houston*, 226 Ill. 2d 135, 874 N.E.2d 23 (2007), regarding compliance fails to consider the broader policy implications embodied in amended Rule 431(b). *Stump*, 385 Ill. App. 3d at 520 ("we find guidance in our supreme court's decision in *** *Houston*, *** where the court failed to give *full* effect to the principle of strict compliance with the mandatory nature of the Illinois Supreme Court rules" regarding the recording of jury selection (emphasis in original)). See *In re Marriage of Fotsch*, 139 Ill. App. 3d 83, 87, 487 N.E.2d 84 (1985) (policy considerations expressed in similar case not present in *instant* case, thus prior case not controlling). In *Houston*, when asked whether he wanted a court reporter present during *voir dire*, defense counsel stated, "I don't need it recorded." The prosecutor immediately followed with, "People waive." *Houston*, 226 Ill. 2d at 138. *Houston* is an ineffective assistance of counsel case, where a remand was ordered to assess the prejudice prong in the context of a *Batson* claim. If not for a *Batson* claim, *Houston* might well have been addressed as a stipulation case. See *Smith v. Freeman*, 232 Ill. 2d 218, 228 (2009) (individuals may waive "substantive rules of law, statutory rights and even constitutional rights" through counsel's stipulation or agreement). Of course, the rule involved in *Houston*, mandating the recording of jury selection, did not place the decision to have a court reporter present expressly on the trial judge.

I read amended Rule 431(b) before us to embody the public policy in Illinois to ensure the selection of fair and unbiased jurors in criminal cases. Prior to the amendment, the burden fell solely on the defendant to request the *voir dire* questioning now mandated by the amended rule. The amended rule now places the legal obligation that fair and unbiased jurors are selected directly on the shoulders of the trial judge. *Cf. United States v. Rowe*, 106 F.3d 1226, 1230 (5th Cir. 1997) ("trial court's actions *** cut off the vital flow of information from venire to court" during *voir dire* process warranting reversal). Under

the amended rule, she must "ask each potential juror, individually or in a group, whether that juror understands and accepts" the principles of certain basic constitutional guarantees. Ill. S. Ct. R. 431(b) (eff. May 1, 2007). When a judge fails to comply with her obligations set out in amended Rule 431(b) to ensure the right of a defendant to a trial before fair and impartial jurors, our judicial system falls short and, I submit, the integrity of the judicial process is impacted. *Herron*, 215 Ill. 2d at 178-79.

Second, to the extent the rule in its current form places any burden on the defense to timely point out a trial judge's failure to abide by the rule, the rule places that same burden on the prosecution. The prosecution should not be heard to claim forfeiture by the defendant when the prosecution itself failed to correct the trial judge's omission. The prosecutor, as a representative of the people of Illinois, is there to ensure that those subject to our criminal justice system receive justice, as reflected in our rules and laws. As a representative of the people, the prosecution must know the rules and laws and do its part to ensure that the rules and laws are followed. When a trial judge falls short on what amended Rule 431(b) requires, the prosecutor cannot sit mute. The prosecutor must have an incentive to speak up.