SECOND DIVISION

May 6, 2003

No. 1-01-1093

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

KATHERINE STEVENS,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from

the Circuit Court

of Cook County

No. 00 CR 24779

Honorable

Ronald A. Himel,

Judge Presiding.

JUSTICE CAHILL delivered the opinion of the court:

Following a bench trial, defendant Katherine Stevens was convicted of intimidation (720 ILCS 5/12-6(a)(1) (West 2000)) and sentenced to a three-year prison term.  On appeal, she contends that the trial court deprived her of her right to a fair trial by: (1) interrupting defense counsel's closing argument; (2) prejudging the merits of the case; (3) misapprehending the law of specific intent; and (4) misusing evidence.  We reverse.

Defendant was charged by information with the  intimidation of Willie May Jimerson.  At trial,  Jimerson testified that the intimidation occurred on September 24, 2000, after she made a criminal misdemeanor complaint against defendant that alleged criminal trespass to Jimerson's vehicle.  Jimerson testified that "[defendant] made a statement that if I come to court I better bring a pistol with me, *** she say that she was going to get a piece of my ass."  Defendant made the statement in a telephone conversation initiated by defendant four days before Jimerson was to testify in court on the misdemeanor complaint.  

Defendant testified in her own behalf and denied making threatening statements to Jimerson.  During defense counsel's closing argument, the following exchanges between defense counsel and the trial court took place:

"DEFENSE COUNSEL:   *** [Defendant's] words *** can be only vaguely construed to be threatening.

THE COURT: Yes, your definition would be perfect in a vacuum.  I mean if there [were] no other things going on in someone's life, *** it would be pretty hard to convict anybody of these specific intent crimes, if in fact what you are trying to tell me means anything.

DEFENSE COUNSEL: Well, Judge--

THE COURT: We have the facts in this case.

DEFENSE COUNSEL: I know.

THE COURT: The facts are the facts.

DEFENSE COUNSEL: We have a little history ongoing between Miss Jimerson and apparently this vehicle that [Jimerson] had.

***

THE COURT: Where do we get this?  All this stuff comes in where that you are talking about--from the defendant's testimony?

DEFENSE COUNSEL: Part of that and part through Miss Jimerson.

THE COURT: I didn't hear Miss Jimerson testify to any of that; okay.

DEFENSE COUNSEL: Well, again--

THE COURT: You know I heard what I think is the nucleus of this case.

DEFENSE COUNSEL: And again, Judge, I'm just commenting about Miss Jimerson, Judge.  You saw her demeanor.  You saw how she came across.  You saw how aggravated she got.

THE COURT: You know, as a matter of fact I would expect someone to be that kind of demeanor based on the questions.  ***

***

DEFENSE COUNSEL: *** [Defendant's] point in calling [Jimerson] was not to keep [Jimerson] from coming to court and that is the bottom line.  Her point was trying to get--

THE COURT: So you think that at the point in time that [defendant] made the phone call on September 24th, *** before dialing the number in order to be convicted of this would have to have the specific intent to make a threat to keep somebody from testifying against her in court?

DEFENSE COUNSEL: No.

THE COURT: Or is it possible in your realm of awareness, consciousness to facts that happened, it is somehow possible that the call started with 'where's my clothes' and then 'by the way if you show up in court I'm going to have your ass if you testify against me?'

DEFENSE COUNSEL: Judge, the--there was never the quid pro quo about testifying ***.

THE COURT: You got about two more minutes and I think you've summed it up.  I don't know, I think you overran the amount of time you took on the case to argue.  I mean the facts are the facts.

DEFENSE COUNSEL: All right.

THE COURT: Facts do make great lawyers.

DEFENSE COUNSEL: I understand Judge.  But finally again our position is she is not guilty of this charge.  ***

***

THE COURT: I'm as clear as can be and convinced as can be that the State has proven your client made those statements and by those statements specifically intended to keep someone from *** testifying in a criminal case.

DEFENSE COUNSEL: Okay, Judge, now--

THE COURT: Look at this.

DEFENSE COUNSEL: Directly she did not use the words and Jimerson did not testify to the words.

THE COURT: Oh, man, you don't even read the cases you cite.  *** 

There is no question in my mind that the victim in this case thought she was going to be hurt by your client ***.

***

End of story.  Proof beyond a reasonable doubt.  Unequivocally the worst, possibly the
 [worst], most heinous crime that comes to these courtrooms is when defendants threaten witnesses not to come to court to testify.  That is what we have here.

Finding of guilty, intimidation, Class III felony.

***

Everything about this case speaks out for the maximum penalty required by law for this threat.

Judgment on my finding.  All bonds revoked.  Presentence investigation ordered."

Defendant first argues that by repeatedly interrupting defense counsel's closing argument, the trial court denied defendant's constitutional right to counsel.  She relies on 
People v. Heiman
, 286 Ill. App. 3d 102, 675 N.E.2d 200 (1996), and 
People v. Smith,
 205 Ill. App. 3d 153, 562 N.E.2d 553 (1990), in which this court reversed convictions of first-degree murder and burglary, respectively, because the trial court interrupted and curtailed defense counsel's closing argument.  The State contends that defendant has waived the alleged error because she did not object at trial or raise the claim in her posttrial motion as required under 
People v. Enoch
, 122 Ill. 2d 176, 522 N.E.2d 1124 (1988).  Waiver aside, the State asserts that the trial court has great latitude to control the duration and scope of closing arguments (
Herring v. New York
, 422 U.S. 853, 862, 45 L. Ed. 2d 593, 600, 95 S. Ct. 2550, 2555 (1975)), and the judge's conduct here was within the boundaries of his discretion.  

Initially, we note that the fundamental importance of a fair trial and the practical difficulties involved in objecting to the trial court's conduct compel a less rigid application of the waiver rule.   
People v. Nevitt
, 135 Ill. 2d 423, 455, 553 N.E.2d 368 (1990).  Where, as here, neither the facts nor the credibility of the witnesses is at issue, legal questions are reviewed 
de
 
novo
.   
In re D.G.
, 144 Ill. 2d 404, 408-09, 581 N.E.2d 648 (1991).   

 A criminal defendant's right to make a closing summation before the finder of fact is a fundamental right derived from the sixth amendment guarantee of assistance of counsel.  
Herring
,  422 U.S. at 856-57, 45 L. Ed. 2d at 597, 95 S. Ct. at 2552-53.  
The trial court lacks discretion to deny a defendant his right to make a proper argument at closing on the evidence and applicable law in his favor.  
Herring
, 422 U.S. at  860, 45 L. Ed. 2d at 599, 95 S. Ct. at 2554.  The right is so fundamental that its denial is grounds for reversal regardless of whether the defendant was prejudiced.  
Herring
, 422 U.S. at 864, 45 L. Ed. 2d at 601-02, 95 S. Ct. at 2556.  Illinois courts have concluded that  "'[i]n a criminal case, our statutes and constitution contemplate that the trial include an opportunity for the defendant to argue his cause by counsel.'"  
Smith
, 205 Ill. App. 3d at 156-57, quoting  
People v. Diaz
, 1 Ill. App. 3d 988, 992, 275 N.E.2d 210 (1971).  "A defendant who waives a jury and submits his or her rights and liberty to a trial judge is entitled to the same fair, patient and impartial consideration he would be entitled to by a jury of fair, impartial, careful and considerate peers."  
Smith
, 205 Ill. App. 3d at 157.  

Here, the trial court repeatedly interrupted defense counsel.  Examples include defense counsel's truncated statements, "Well, Judge--," Well, again--," and  "Okay, Judge, now--."  The trial court exhibited impatience in telling defense counsel, "You got about two more minutes," immediately followed by the contradictory statement, "I think you overran the amount of time you took on the case to argue."  The trial court showed prejudgment in remarking before counsel completed his closing argument, "I'm as clear as can be and convinced as can be that the State has proven [that defendant committed the offense]."  These statements support our conclusion that the trial judge committed reversible error by denying defendant her right to make a proper closing argument.   

The State attempts to distinguish 
Heiman
 and 
Smith
 on their facts, arguing that the quantity, sequence and duration of the interruptions in those cases were more egregious than the interruptions here.  This argument is not persuasive, particularly in light of the Supreme Court's admonition that constitutional provisions are not to be given "a narrowly literalistic construction."  
Herring
, 422 U.S. at 857, 45 L. Ed. 2d at 598, 95 S. Ct. at 2553.  The conduct of the trial court was sufficiently egregious to support reversal.

There is more in play here than issues of fundamental due process.  Set aside for a moment the trial judge's final remarks, where he appears to be leaning in the direction of a maximum sentence before he has held a sentencing hearing or reviewed a presentence report.  Set aside as well the court's musings on the evidence while counsel was trying to make a coherent closing argument--an argument that he has the right to shape as he sees fit, if not to convince the trier of fact, then, at the very least, to build his record for appellate review.  What cannot be measured is the impact of this kind of management of a criminal trial on the onlooker.  It demeans the solemnity of a proceeding where a person's liberty is at stake, it demeans the role of counsel, and it casts a shadow over the evenhandedness of the trier of fact in a proceeding where the absence of bias should be beyond the shadow of doubt.  

Although our disposition of this issue makes it unnecessary for us to consider defendant's other three contentions, we do assess whether, after reviewing the record in the light most favorable to the State,  the evidence was sufficient to prove defendant guilty of intimidation beyond a reasonable doubt.  
Heiman
, 286 Ill. App. 3d at 113.  If an appellate court reverses a criminal conviction and remands the case for a new trial without deciding the sufficiency of the evidence at the first trial, it risks subjecting the defendant to double jeopardy on retrial.  
People v. Taylor
, 76 Ill. 2d 289, 309, 391 N.E.2d 366 (1979), citing 
Burks v. United States
, 437 U.S. 1, 11, 57 L. Ed. 2d 1, 9, 98 S. Ct. 2141, 2147 (1978) (the double jeopardy clause precludes a second trial giving the State another opportunity to offer evidence not presented in the first trial).  

Having reviewed the record here in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of intimidation beyond a reasonable doubt.  See 
People v. Byrd
, 285 Ill. App. 3d 641, 647, 673 N.E.2d 1071 (1996) (the offense of intimidation requires specific threats intended to compel a person to act against the person's will; the requisite specific intent may be inferred from the facts and circumstances surrounding the offense).  This holding does not imply that we have made a finding as to defendant's guilt that would be binding on the court on retrial.  
Taylor
,  76 Ill. 2d at 310.   

We reverse defendant's conviction based on the constitutional defect in her trial and remand for a new trial.

Reversed and remanded.

McBRIDE, P.J., and BURKE, J., concur.