FIRST DIVISION

No. 1-07-1768

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 04 CR 7764 |
| | ) | |
| JAMES ANDERSON, | ) | Honorable |
| | ) | Diane Gordon Cannon, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LAMPKIN[1] delivered the opinion of the court:

The amended Illinois Supreme Court Rule 431(b) went into effect on May 1, 2007. Jury selection in the murder case against James Anderson began three weeks later, on May 21, 2007. The jury found defendant guilty of first degree murder and aggravated battery with a firearm. Defendant raises several issues on appeal, but we focus on the question of whether the trial court

---

[1]This opinion was originally authored by Justice Warren Wolfson. Justice Lampkin was appointed to the Illinois Appellate Court by the Illinois Supreme Court on September 25, 2009, replacing Justice Wolfson, retired, as a member on the panel assigned to review this case. Justice Lampkin, along with the other members of the panel, has reconsidered this case pursuant to the Supreme Court's supervisory order. People v. Anderson, 233 Ill. 2d 565, 914 N.E.2d 487 (2009).

1-07-1768

complied with Rule 431(b)(Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007) in conducting voir dire and, if not, whether the defendant's convictions should be reversed for another trial.  We reverse and remand.

FACTS

On May 3, 2003, defendant agreed to drive the codefendants, Christopher Washington and Sheldon Smith, to a neighborhood where the codefendants shot three individuals.  Two of the victims were injured and one died.  According to defendant, the codefendants merely asked him to drive them to obtain marijuana.  Defendant testified he did not know the codefendants intended to shoot the victims.  Defendant said he continued to follow the codefendants' instructions as they chose their targets because he feared for his safety.  Defendant never attempted to withdraw himself from the scene or report the offenses.

Codefendant Washington, who pled guilty to his involvement in the offenses and was sentenced to 26 years' imprisonment, testified he was in a car around midnight on the date in question looking to avenge a fellow gang member's death.  Washington did not know the driver of the car.  Washington was armed.  He shot three people, in different locations.  He said he shot all the victims, but he did not instruct the driver to slow the car in order to do so.  The police chased the car, and Washington and the driver left it to run away.  Washington was caught and

-2-

arrested.

Although he originally named two rival gang members, Washington eventually implicated defendant and codefendant Smith. Washington said at trial the police forced him to name defendant and codefendant Smith because of their criminal backgrounds.

Washington had agreed to videotape his statement. It was introduced into evidence. At trial, he said most of the videotaped statement was untrue. In the videotape, Washington said he, defendant, and Smith were selected by their gang to shoot rival gang members in exchange for drugs and money. Defendant drove the car. Defendant and Smith were armed with handguns and all three shot at different individuals throughout the neighborhood. Washington said he was treated well by the police. At trial, he testified he was "jacked" by the police.

Detective John Otto testified he and Assistant State's Attorney (ASA) William Merritt interviewed defendant on January 30, 2004. Otto advised defendant of his Miranda rights, which defendant waived. Defendant admitted he drove the vehicle involved in the shootings while Smith and Washington rode as passengers. When Otto confronted defendant with inconsistencies between his confession and Washington's statement, defendant drew a diagram of the shootings as he remembered them. Defendant said he drove the vehicle during each shooting. Defendant never told Otto he was threatened at gunpoint. ASA Merritt's testimony was

consistent with that of Detective Otto, adding defendant said he was the driver, but not a shooter.

Defendant consented to have his confession videotaped. The videotape was admitted as evidence. The videotaped statement was consistent with defendant's oral statement, adding he was in shock after the first shooting, but he continued driving as told. He did not say he was threatened at gunpoint.

Defendant testified he did not know Washington and Smith were armed when he agreed to drive them to obtain marijuana. While driving, Washington first instructed defendant to slow down near two men standing on a corner. Washington rolled down the window, asked the men for marijuana, then shot at them. Defendant was shocked, but he was instructed to drive away. He complied. On the way to the next location, Washington and Smith told defendant to slow the car when they saw another individual. Smith asked that individual whether he had marijuana and whether he was a rival gang member. The individual responded no to both questions. Smith shot him. Defendant then drove to the next location as instructed. He was told to stop when they reached a man in an alley. Washington asked the man about marijuana. Then he shot him.

On cross-examination, defendant said he did not want to continue driving the car, but he was ordered to at gunpoint. Defendant admitted he did not include that fact in his videotaped

statement; however, he said it to the detectives before he gave the videotaped statement. Anderson testified he drove to the second location as instructed because he thought he would be shot if he disagreed. Defendant said he stopped the car during the second shooting, but did not attempt to exit because he was afraid. Defendant denied knowing Washington and Smith intended to shoot the man in the alley, but admitted he drove the car around the block to find the man again. When unsuccessful, Smith and Washington exited the car and approached another individual. Defendant was instructed to wait in the car and he complied. Smith and Washington shot that individual, then told defendant to drive away. Defendant tried to slow the car when the police approached, but was instructed to turn on a dead-end road and speed up. He complied and did not exit the car to run away until instructed. Defendant later moved to Du Page County. Defendant denied evading the police, but admitted he never reported the offenses because he feared for his and his family's safety.

The jury found defendant not guilty of aggravated battery with a firearm of the first victim, but guilty of aggravated battery with a firearm of the second victim and first degree murder of the third victim. Both convictions were based on the theory of accountability. Defendant was sentenced to consecutive terms of 35 years' imprisonment for the first degree murder count and 10 years' imprisonment for the aggravated battery with a

1-07-1768

firearm count.  This timely appeal followed.

DECISION

I.  Rule 431(b)

We first turn to the issue of whether the court complied with the requirements of Rule 431(b) in conducting <u>voir</u> <u>dire</u> and, if not, whether lack of compliance may be considered harmless error.

Defendant did not make a Rule 431(b) objection.  See <u>People v. Enoch</u>, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988) (in order to preserve an error for appellate review, the defendant must object at trial and include the alleged error in a posttrial motion).  The State contends the defendant forfeited the Rule 431(b) issue by failing to make a timely objection and by omitting the issue from his posttrial motion.  We recognize, as suggested by the defendant, a "less rigid application of the waiver rule" is applied when the trial court's conduct is at the center of the claimed error.  <u>People v. Nevitt</u>, 135 Ill. 2d 423, 455, 553 N.E.2d 368 (1990); <u>People v. Stevens</u>, 338 Ill. App. 3d 806, 810, 790 N.E.2d 52 (2003).  We have chosen to address the defendant's claim that plain error occurred.

The plain error doctrine allows us to review an issue affecting substantial rights despite forfeiture in either of two circumstances:

"First, where the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence, a reviewing court may consider a forfeited error in order to preclude an argument that an innocent man was wrongly convicted. [Citation.] Second, where the error is so serious that defendant was denied a substantial right, and thus a fair trial, a reviewing court may consider a forfeited error in order to preserve the integrity of the judicial process." People v. Herron, 215 Ill. 2d 167, 178-79, 830 N.E.2d 467 (2005).

It is the second Herron circumstance that we consider in this case. Defendant claims the trial court's failure to comply with Rule 431(b) denied him basic guarantees for obtaining a fair and impartial jury. The right to an impartial jury "is so fundamental to due process that any infringement of that right requires reversal by a reviewing court." People v. Boston, 271 Ill. App. 3d 358, 360, 648 N.E.2d 1002 (1995).

The court conducted voir dire and empaneled the jury. The court first told the entire group of prospective jurors:

"The charges in this case, ladies and gentlemen, come by way of a Cook County Grand Jury indictment. They are not any evidence of guilt against [defendant].

-7-

He is presumed innocent of the charges and the State has the burden of proving him guilty beyond a reasonable doubt."

The first panel of prospective jurors was then brought forward. The judge said:

"As I indicated earlier, the defendant is presumed innocent of the charges. The State has the burden of proving the defendant guilty beyond a reasonable doubt. The defendant is not required to prove his innocence, nor is he required to testify or call witnesses on his own behalf.

Should the State meet their burden of proof beyond a reasonable doubt, is there anybody seated in the jury box who could not or would not go into the jury room with your fellow jurors and the law that governs this case as I give it to you and sign a verdict form of guilty? Anybody who could not or would not do that for any reason?

(No audible response.)

No response. Should the State fail to meet their burden of proof beyond a reasonable doubt, is there anybody seated in the jury box who could not or would not go into the jury room with your fellow jurors and the law that governs this case as I give it to you and

sign a verdict form of not guilty?

(No audible response.)

No response."

Eight jury members were selected from this panel. After the eight jury members were selected, they were sent to the jury room and were not present for the <u>voir</u> <u>dire</u> of the remaining panels.

When the second panel of potential jurors was brought forward, the judge said:

"Ladies and gentlemen, I wish to thank you for your time and patience. As I indicated earlier, the charges against the defendant come by way of a Grand Jury indictment. They are not any evidence against the defendant.

The defendant is presumed innocent of the charges against him and the State has the burden of proving him guilty beyond a reasonable doubt. He is not required to call witnesses on his own behalf or testify on his own behalf.

Is there anybody who has any qualms or problems with those propositions of law?

(No audible response.)

No response. Should the State meet their burden of proof beyond a reasonable doubt, is there anybody seated in the jury box who could not or would not go

into the jury room with your fellow jurors and follow the law that governs this case as I give it to you and sign a verdict form of guilty?  Anybody who could not or would not do that for any reason?

(No audible response.)

No response.  Should the State fail to meet their burden of proof beyond a reasonable doubt, is there anybody seated in the jury box who could not or would not go into the jury room with your fellow jurors and the law that governs this case as I give it to you and sign the verdict form of not guilty?

(No audible response.)

No response."

Four jurors were selected to serve from this panel and one juror was selected as an alternate.

When the court called the third panel, the judge said:

"Again, ladies and gentlemen, I wish to thank you for your time and patience.  As indicated in my opening remarks, the defendant is presumed innocent of the charges against him and the State has the burden of proving him guilty beyond a reasonable doubt.

Is there anyone who has any problems or qualms with that proposition of law?

(No audible response.)

No response.  The defendant is not required to prove his innocence.  He is not required to call witnesses or testify on his own behalf.

If the State meets their burden of proof beyond a reasonable doubt, is there anybody seated in the jury box who could not or would not go into the jury room with your fellow jurors and the law that governs this case as I give it to you and sign a verdict form of guilty?  Anybody who would not or could not do that?

(No audible response.)

No response.  If the State should fail to meet their burden of proof beyond a reasonable doubt, is there anybody who could not or would not follow the law and sign a verdict form of not guilty.

(No audible response.)

No response."

One alternate juror was selected from this panel.

The defense does not challenge the trial court's questioning of the second and third juror panels.  We focus our attention on the questioning of the first panel, from which eight jurors were selected.

The canons of statutory construction apply to supreme court rules.  <u>Robidoux v. Oliphant</u>, 201 Ill. 2d 324, 332, 775 N.E.2d 987 (2002).  Our primary goal is to ascertain and give effect to

-11-

1-07-1768

the intent of the drafters by relying on the plain and ordinary language of the rule. Robidoux, 201 Ill. 2d at 332. The supreme court has said:

> "The rules of court we have promulgated are not aspirational. They are not suggestions. They have the force of law, and the presumption must be that they will be obeyed and enforced as written." Bright v. Dicke, 166 Ill. 2d 204, 210, 652 N.E.2d 275 (1995).

Construction of supreme court rules is a question of law, which we review de novo. Robidoux, 201 Ill. 2d at 332.

Rule 431(b), as amended effective May 1, 2007, provides:

> "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

-12-

The court's method of inquiry <u>shall</u> provide each juror an <u>opportunity</u> <u>to</u> <u>respond</u> to specific questions concerning the principles set out in this section." (Emphasis added.) Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

Before the 2007 amendment, the court was required to admonish the jurors and ascertain whether they understood and accepted the enumerated principles announced in <u>People v. Zehr</u>, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984), "[i]f requested by the defendant." 177 Ill. 2d R. 431(b). Before that, in 1997, Rule 431 was amended to ensure compliance with the <u>Zehr</u> principles by changing the court's <u>voir</u> <u>dire</u> requirements from discretionary to compulsory by amending the word "may" to "shall." See <u>People v. O'Brien</u>, 197 Ill. 2d 88, 93, 754 N.E.2d 327 (2001) (use of the word "shall" is "construed as a clear expression of legislative intent to impose a mandatory obligation").

It is axiomatic that amendments to rules are designed to serve some purpose. <u>In re Application of the County Collector</u>, 356 Ill. App. 3d 668, 670, 826 N.E.2d 951 (2005). We must construe the rule consistent with the purpose of the amendments, relying on the presumption that the supreme court intended to change the law in 1997 and 2007. See <u>In re Application of the County Collector</u>, 356 Ill. App. 3d at 670.

The clear language of Rule 431(b) requires the court to ensure jurors are qualified to know, understand, and accept the enumerated principles and are provided with an opportunity to respond. See Zehr, 103 Ill. 2d at 477. The rule "seeks to end the practice where the judge makes a broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law." 177 Ill. 2d R. 431, Committee Comments, at lXXiX.

When the 2007 amendment deleted the language "[i]f requested by the defendant," the rule charged trial courts with an affirmative sua sponte duty to ask potential jurors whether they understand and accept the Zehr principles in each and every case. People v. Magallanes, No. 1-07-2826, slip op. at 13-14 (December 23, 2009), citing People v. Graham, 393 Ill. App. 3d 268, 273, 913 N.E.2d 99 (2009); People v. Arredondo, 394 Ill. App. 3d 944, 950, 916 N.E.2d 1263 (2009); People v. Madrid, 395 Ill. App. 3d 38, 46, 916 N.E.2d 1273 (2009). Moreover, the court must provide each juror with "an opportunity to respond to" the specific Zehr principles. We find Rule 431(b) was amended to send a clear message to trial and appellate courts: it is the courts' responsibility to enforce the rules as written.

The incomplete voir dire conducted in this case is the practice the amended rule seeks to end. See 177 Ill. 2d R. 431, Committee Comments. With regard to the first panel of

-14-

1-07-1768

prospective jurors, from which eight were selected, the court provided only three of the four Zehr principles in narrative form, not in questions. Asking the first panel members as a group whether they would sign the appropriate verdict form if the State had or had not met its burden of proof was a "general question concerning the juror's willingness to follow the law." 177 Ill. 2d R. 431, Committee Comments, at lxxix. The court did not adequately determine whether the majority of empaneled jurors understood and accepted any of the four Zehr principles. The court's inquiry did not satisfy Rule 431(b) and constitutes error.

On September 30, 2009, our supreme court issued a supervisory order (People v. Anderson, 233 Ill. 2d 565, 914 N.E.2d 487 (2009)) instructing us to vacate our previously filed opinion in this case (People v. Anderson, 389 Ill. App. 3d 1, 904 N.E.2d 1113 (2009)) and reconsider it in light of People v. Glasper, 234 Ill. 2d 173, 917 N.E.2d 401 (2009). We have complied.

In Glasper, the supreme court considered whether application of harmless error was appropriate where the trial court refused to ask venire members, as requested by the defendant, whether they understood that the defendant's decision not to testify could not be held against him. Glasper, 234 Ill. 2d at 189. At the time, the 1997 version of Rule 431(b) was in effect.

-15-

1-07-1768

Glasper, 234 Ill. 2d at 200. The Glasper court held, pursuant to the facts of that case, the failure to comply with the 1997 version of Rule 431(b)(4) constituted harmless error. Glasper, 234 Ill. 2d at 200.

In doing so, the supreme court found the Rule 431(b)(4) error in Glasper did not constitute a structural error where the right provided by the rule was not "a fundamental right, or even a constitutional protection." Glasper, 234 Ill. 2d at 193, 197-98. Rather, the supreme court emphasized that the principle encapsulated by Rule 431(b)(4) was available only as a result of the Supreme Court Rules. Glasper, 234 Ill. 2d at 193, 196-97. The supreme court found it significant that, at the time of trial, the right in question was discretionary, in that jurors were informed of the right only if the defendant specifically requested it. Glasper, 234 Ill. 2d at 193. The Glasper court, therefore, concluded that the right was not "indispensable to a fair trial." Glasper, 234 Ill. 2d at 196.

However, the supreme court said:

"We emphasize that this holding is limited to the version of Rule 431(b)(4) that was in effect at the time of the instant trial, and would not necessarily apply to subsequent versions of the rule. We also make clear that we are not holding that a Rule 431(b)(4) violation could never result in a reversible error."

-16-

1-07-1768

   Glasper, 234 Ill. 2d at 200.

   The Glasper harmless error analysis is not appropriate under the facts of this case. Here, the applicable version of Rule 431(b) was that amended in 2007. As stated, the 2007 amendment requires that trial judges ensure all jurors know, understand, and accept the Zehr principles, and are provided with an opportunity to indicate their understanding and acceptance of them. While the 1997 version was permissive (Glasper, 234 Ill. 2d at 200), the supreme court intentionally amended Rule 431(b) in 2007 to mandate Zehr questioning for each and every defendant.

   Here, the trial judge never inquired of the first panel, from which eight jurors were selected, whether they knew, understood, or accepted all four of the Zehr principles. The panel was apprised of the first three principles, namely, that defendant was presumed innocent, that the State had to prove defendant guilty beyond a reasonable doubt, and that defendant did not have to offer any evidence; however, the trial judge never asked, individually or as a group, whether the jurors understood and accepted these principles. Unlike the defendant in Glasper, the jurors here were not merely impaneled without asking whether they understood and accepted that defendant's decision whether to testify could not be used against him. Therefore, the instant trial court not only failed to comply with Rule 431(b)(4), but also failed to comply with Rules 431(b)(1)

-17-

through (b)(3). There is, therefore, no way to know whether the jurors were biased or unbiased.

The right to an impartial jury is a substantial right, or in other words "a constitutional right" under both the United States and Illinois Constitutions. See People v. Bean, 137 Ill. 2d 65, 81, 560 N.E.2d 258 (1990) (discussing examples of substantial rights while analyzing whether the defendant's absence during *in camera voir dire* amounted to such). The sixth amendment provides "[i]n all criminal prosecutions, the accused shall enjoy the right to *** trial, by an impartial jury." U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§8, 13. The Supreme Court said:

> "[P]art of the guarantee of a defendant's right to an
> impartial jury is an adequate *voir dire* to identify
> unqualified jurors. [Citations.] '*Voir dire* plays a
> critical function in assuring the criminal defendant
> that his [constitutional] right to an impartial jury
> will be honored. Without an adequate *voir dire* the
> trial judge's responsibility to remove prospective
> jurors who will not be able impartially to follow the
> court's instructions and evaluate the evidence cannot
> be fulfilled.' [Citation.]" Morgan v. Illinois, 504
> U.S. 719, 729-30, 119 L. Ed. 2d 492, 503, 112 S. Ct.

2222, 2230 (1992) (holding that the trial court was required, upon the defendant's request, to question the venire members regarding potential bias in the capital case in order to ensure a fair trial).

And, violations of substantial rights constitute plain error. Bean, 137 Ill. 2d at 81.

The questions set out in Rule 431(b) are "essential to the qualifications of jurors in a criminal case." Zehr, 103 Ill. 2d at 477. Instructing the jury properly at the end of trial does not address the question of whether a fair and impartial jury has been selected. The supreme court said:

"If a juror has a prejudice against any of these basic guarantees, an instruction given at the end of the trial will have little curative effect." Zehr, 103 Ill. 2d at 477.

See People v. Starks, 169 Ill. App. 3d 588, 596, 523 N.E.2d 983 (1988) ("Zehr teaches that admonitions and *instructions* are no substitute for interrogation" (emphasis added)). The very act of amending the rule to make Zehr compulsory demonstrates the supreme court recognized that the enumerated principles are fundamental to securing a fair and impartial jury.

We need not consider the weight of the evidence against defendant because we have found the plain error described in the second circumstance of the Herron test. That is, the instant

-19-

1-07-1768

Rule 431(b) error "is so serious that defendant was denied a substantial right, and thus a fair trial." Herron, 215 Ill. 2d at 178-79. Once having said that, there is no need to inquire into the harmfulness of the error or the measure of prejudice incurred by the defendant. Plain error is reversible error. See People v. Keene, 169 Ill. 2d 1, 17, 660 N.E.2d 901 (1995). There is no need for further inquiry.

The facts of this case dictate reversal for plain error because of the trial court's egregious failure to comply with Rule 431(b). We await instruction from our supreme court as to whether reversible error occurs every time a trial court fails to comply with any or all of Rule 431(b).

II. Remaining Contentions

Because of our disposition of the Rule 431(b) issue, we see no need to consider defendant's other contentions.

CONCLUSION

We reverse the judgment of the trial court and remand this case for a new trial.

Reversed and remanded.

HALL, P.J., concurs.

GARCIA, J., dissents.

1-07-1768

JUSTICE GARCIA, dissenting:

In People v. Glasper, 234 Ill. 2d 173, 185, 917 N.E.2d 401 (2009), our supreme court addressed whether the circuit court's failure "to conduct voir dire in accordance with Zehr and Rule 431(b)" is subject to harmless-error analysis. Our supreme court ruled harmless-error analysis applies. Glasper, 234 Ill. 2d at 185.

The version of Rule 431(b) at issue in Glasper was the 1997 version, which required that each of the Zehr questions be asked of the venire only upon request of the defendant. Glasper, 234 Ill. 2d at 187. The version of Rule 431(b) at issue before us is the 2007 version, which places a sua sponte duty on the circuit court to ask each of the Zehr questions. Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007; People v. Graham, 393 Ill. App. 3d 268, 273, 913 N.E.2d 99 (2009). Just as we found the trial court violated Rule 431(b) in Anderson I, the supreme court in Glasper found "[t]he trial court committed error when it ignored our long-standing precedent and our rules by refusing to question the venire in accordance with Rule 431(b)(4)." Glasper, 234 Ill. 2d at 189.

The dispositive question before us now is whether the 2007 amendment to Rule 431(b), imposing a sua sponte duty upon the circuit court, changed the analysis we must follow regarding a violation of the rule from one where harmless error applies, such

-21-

that automatic reversal is rejected, to one where prejudice is presumed under the second prong of the plain error doctrine, such that automatic reversal is mandated. See Glasper, 234 Ill. 2d at 189 ("We are called upon to determine whether the trial court's error requires us to presume prejudice and automatically reverse defendant's conviction, or whether the error is subject to harmless-error analysis"). The majority finds automatic reversal is mandated (slip op. at 20); I cannot agree.

As our supreme court stated in Glasper:

"The error in this case does not involve a fundamental right, or even a constitutional protection. The error involves a right made available only by rule of this court."
Glasper, 234 Ill. 2d 193.

The only difference between the version of Rule 431(b) that the trial judge was required to follow in this case and the version violated in Glasper is that the right in question is now afforded to all defendants by virtue of the sua sponte duty imposed upon the circuit court by the 2007 amendment. That change, however, does not change the right in question: it remains neither "a fundamental right, [nor] even a constitutional protection." Glasper, 234 Ill. 2d at 193; see People v. Alexander, No. 3-07-0915, slip op. at 18 ("We do not think that this difference precludes application of the Glasper rationale to

the instant case").

I acknowledge that the supreme court in Glasper directed the lower courts not to look beyond its exact holding:

> "We emphasize that this holding is limited to the version of Rule 431(b)(4) that was in effect at the time of the instant trial, and would not necessarily apply to subsequent versions of the rule." Glasper, 234 Ill. 2d at 200.

The supreme court also made clear that it did not hold, in the context where the error was preserved, "that a Rule 431(b)(4) violation could never result in reversible error." Glasper, 234 Ill. 2d at 200.

I acknowledge reasonable grounds exist, as expressed by the majority here, to disagree on the plain error issue before us. The supreme court in Glasper expressly held that its decision might not apply to the 2007 version of Rule 431(b), a version in existence at the time the Glasper decision was issued in 2009, while the court's supervisory order, vacating Anderson I, directed we reconsider the decision in light of Glasper. I read the two directives to mean that we should not look to the holding in Glasper to control our decision but we may look to the reasoning in Glasper to determine whether it nonetheless applies to the 2007 version of Rule 431(b). I find the reasoning in

1-07-1768

<u>Glasper</u> applies with equal force here.

Critical to my change in view is the defendant's failure to marshal a persuasive reason the 2007 amendment to Rule 431(b), imposing a <u>sua</u> <u>sponte</u> duty on the circuit court warrants a change in the analysis we should follow. In his supplemental brief, allowed by this court after the supervisory order was issued, the defendant simply restates the rule to support the outcome he urges:

> "[Q]uestioning is now mandatory in all cases under the current version of Rule 431(b), which was in effect at the time of Anderson's trial. See Official Reports Advance Sheet No. 8 (April 11, 2007), Rule 431(b), eff. May 1, 2007. As a result, compliance with this rule is now indispensable to a fair trial, making this precisely the sort of error that should not be subject to harmless error analysis."

The defendant fails to explain why the change to a <u>sua</u> <u>sponte</u> duty on the circuit court makes it indispensable to a fair trial for him, but the trial judge's erroneous denial of the request that a specific <u>Zehr</u> question be asked of the venire was not indispensable to a fair trial for defendant Glasper. As I read it, the defendant's supplemental brief offers nothing more

-24-

1-07-1768

than what we considered in issuing our decision in <u>Anderson I</u> when we did not have the benefit of the <u>Glasper</u> analysis.

Having reconsidered my special concurrence in <u>Anderson I</u>, I am no longer convinced that the circuit court's failure to thoroughly conduct Rule 431(b) questioning makes it inevitable that the jury that decided the defendant's case was biased. See <u>Glasper</u>, 234 Ill. 2d at 201 ("We reject the idea that the trial court's failure to conduct Rule 431(b)(4) questioning makes it inevitable that the jury was biased"). I cannot agree that the defendant is entitled to a new trial based solely on his otherwise meritorious claim that the circuit court did not comply with Rule 431(b), an error that does not trigger automatic reversal as it may constitute harmless error. See <u>People v. Magallanes</u>, No. 1-07-2826, slip op. at 37 (December 23, 2009) ("The holding in <u>Glasper</u> *** compels us to reject defendant's argument that Rule 431(b)(4) errors are automatically reversible").

I respectfully dissent.

1-07-1768


REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

_____


THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

JAMES ANDERSON,

Defendant-Appellant.

_____

No. 1-07-1768

Appellate Court of Illinois
First District, FIRST DIVISION

March 29, 2010

_____

Justice Bertina E. Lampkin authored the opinion of the court:

Presiding Justice Hall concurs.

Justice Garcia dissents.

_____

Appeal from the Circuit Court of Cook County.
The Hon. Diane Gordon Cannon, Judge Presiding.

_____

**COUNSEL FOR APPELLANT**
Michael J. Pelletier, State Appellate Defender, Chicago, IL 60601
Patricia Unsinn, Deputy Defender
OF COUNSEL: Brian E. Koch

**COUNSEL FOR APPELLEE**
Anita Alvarez, Cook County State's Attorney, Chicago, IL 60602
OF COUNSEL: James E. Fitzgerald, Alan J. Spellberg,
Clare Wesolik Connolly and Carol L. Gaines

1-07-1768